## Birch, et al. v. Sallee, et al.

(Decided November 7, 1912.)

### Appeal from Oldham Circuit Court.

Contracts—Insurance of Tobacco by Owner of Land—Destruction of Tobacco—Claim of Tenant for Part of Insurance—Pleadings—Evidence.—In an action by tenants against the landlord for half of the insurance paid for the loss of tobacco, the verdict in favor of the tenants will not be disturbed. While the policy was taken out by the owners of the land, the evidence of the tenants supports their contention as to their interest in the policy, and the pleadings and proof are sufficient to uphold the agreement made between the parties as to the interest each should have.

J. W. S. CLEMENTS for appellants.

A. T. LADD, S. A. RUSSELL and S. E. DEHAVEN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellants, Miller and Arch Birch, own a farm near Goshen, Oldham County. They leased it to Seymour Sallee for the year 1910, and he, aided by his brother,

James Sallee, raised a crop of tobacco on it that year. Just after the tobacco was housed, appellants took out insurance on the barn for $300.00 and on the tobacco for $2,200.00. The barn the tobacco was housed in was known as the "Hollow Barn." Appellants also took out insurance in the same policy, on other barns on the farm and the tobacco therein which had been raised by other tenants. Sometime in December of that year, while appellees were stripping their tobacco, it and the barn in which it was housed were destroyed by fire. The insurance company paid appellants the full amount of the insurance carried both upon the barn and the tobacco, and appellees demanded one-half of the insurance upon the tobacco, less a sum equal to one-half of the amount of the premium, appellants refused to pay them, and this action was instituted to recover that sum.

The substance of the allegations of the petition was that appellants owned one-half of the tobacco and they owned the other half; that appellants agreed to take out the insurance upon the tobacco, pay the whole of the premium and retain a lien upon their half interest for their portion of the premium which was to be accounted for when the tobacco was sold. Appellants filed an answer and counterclaim in which they denied the allegations of the petition and pleaded a counterclaim of $350.00 for supplies which they alleged they furnished apellees during the year. They also alleged that they made a contract in the fall of 1910 for the lease of the farm to appellees for the year 1911; that appellees remained on the farm until March 20, 1911, and then moved from the place and refused to raise a crop in accordance with their contract; that it was so late in the year when appellees left the place they were unable to get other tenants and have the farm cultivated that year to their damage in the sum of $600.00. Appellees filed a reply admitting $125.00 worth of supplies furnished them for the year 1910, but denied appellants' claim for damages on account of their failure to cultivate the place in 1911, and alleged that appellants first violated the contract for 1911; that they left the place at the time stated because they did not have any thing upon which to live as appellants had violated their part of the contract in failing to give them their part of the insurance money. This was denied by appellants.

The jury heard the evidence and, after being instructed by the court, returned the following verdict:

"We, nine of the jurors, find for the plaintiffs, after off-setting all claims, the sum of $518.00."

Appellants' counsel ask a reversal of the case for the following reasons, to-wit: first, the demurrer to the petition and the motions for a peremptory instruction to find for them, and for a judgment in their favor notwithstanding the verdict, should have been sustained at the time they were made; second, because there is such variance between the allegations and proof of appellees as to amount to failure of proof, no amendment having been offered; third, because the policy, which was given in evidence, shows on its face that appellees had no interest in the insurance contract; fourth, because appellees sued for money had and received when, if there was such a contract as they claim, they should have sued for a breach thereof. They alleged a contract of insurance, but proved only a contract to insure; fifth, because the pleadings and proof both fail to show any consideration sufficient to support the alleged contract. Appellants' most serious contention of error is to instruction number one. It is as follows:

"If the jury believe from the evidence that the plaintiff Seymour Sallee entered into an agreement with the defendants Miller and Arch Birch, by which the defendants were to insure the joint crop of tobacco raised by the plaintiffs on defendants' land, and housed in the barn described as the 'Hollow Barn' in the policy of insurance the defendants to pay the premium for said insurance, and the plaintiff to repay the defendants one-half of the premium for said insurance, and they further believe from the evidence that the defendants did in pursuance to said agreement insure the said joint crop of tobacco for $2,200.00 they should find for the plaintiffs against the defendants the sum of $1,100.00," &c.

The instructions given on the other issues directed the jury to take from the amount they found for appellees under the first instruction, if any thing, the amount they found for appellants thereunder, if any thing. Appellees' testimony was to the effect that before the tobacco was housed they declined, when solicited by appellants, to take out insurance for the reason that they had been raising tobacco for twenty-five years and never insured, but they afterward concluded to take insurance and so informed appellants. They stated that about the time they housed the tobacco appellant Miller Birch came to Seymour Sallee and informed him that his brother, Arch

Birch, was going to cancel the insurance, unless he would pay his part of the premium, and he said to Miller Birch that they did not have the cash to pay with and Birch then told him that all they wanted him to do was to consent that one-half of the premium should be accounted for by them on settlement after the tobacco was sold, to which he then and there agreed; that it was then agreed between them that Miller Birch should go to the tele-phone and inform Arch Birch of the agreement and tell him not to cancel the policy; that he was to go to his brother, James Sallee, and inform him of the agreement; that he did so and his brother agreed to stand by the contract; that after this he went to Louisville to the office of Arch Birch at the stockyards to have the policy read to him, as he could neither read nor write; that he asked Arch Birch to read the policy to him and when it was read he found that neither he nor his brother's name was mentioned in it and he called Birch's attention to that fact and Birch told him that would not make any difference; that the whole of the tobacco was insured and if it should burn they would pay them their half. The testimony of appellees and their witnesses showed that they had in only about eighteen acres of tobacco which was housed in the "Hollow Barn," and that the whole of it was not worth more than $2,200.00; that it was insured for its full value. The policy was introduced as evidence and the insurance agent who contracted the insurance testified. The policy shows that the Birches in taking the insurance out did not have it state that it was upon their interest, or part of the tobacco, but the policy indicated that it was upon the whole of the tobacco in the "Hollow Barn." Appellants' and their witnesses' testimony tends to show that the Sallees at all times refused to take insurance and had no part or interest in this insurance contract; that it was taken out to cover their interest in the tobacco, which was one-half of it, and the interest they had in appellees' part by way of lien thereon for $350.00 the value of the supplies they claim to have furnished appellees, and that after the fire appellees stated they had no insurance. The parties agree that before the fire Seymour Sallee appeared at Arch Birch's office and had the policy read to him, but appellants deny the statements of Seymour Sallee as to what was said upon that occasion and that he promised to pay him one-half of what the policy called for if the

tobacco should be destroyed by fire and stated that he at that time asked Seymour Sallee to insure his interest in the tobacco and he refused to do it. Two or three employes at the stockyards stated that they were present at this conversation and in the main agree with Birch as to what was said. The testimony of appellants also tended to show that there were as many as twenty-seven or twenty-eight acres of tobacco in the barn and that it was worth much more than $2,200.00, but they failed to show that it was worth $4,400.00.

The jury was authorized by the evidence to believe that the tobacco in that barn was not worth more than $2,200.00. The tobacco in the other two barns on the place which was raised by tenants was insured in the same way, that is for its full value. A strong circumstance in favor of appellees' theory of the case is that he went to Birch and asked him to read the policy to him. If as according to appellant's theory, appellees had no interest in the policy why did he want to hear it read? And why did Birch take the trouble to read and explain it to him? The fact that Birch did read and explain the policy to him is not contradicted; the only difference is as to what was said at the time it was read and explained. Considering all the facts and circumstances of the case, we believe the jury had a right to accept appellees' theory.

The allegations of the petition are sufficient to sustain the recovery, and appellants were not entitled to a peremptory instruction and the court properly refused to give them a judgment notwithstanding the verdict. As stated, the petition was founded upon the idea that appellants had received from the insurance company $1,100.00 less appellees' part of the premium which belonged to appellees. There was no material variance between the allegations of the petition and the proof. It is true that the policy of insurance introduced as evidence does not show that appellees had any interest in the contract for their names were not mentioned in it, but it does not show that they did not have an interest in it as between them and appellants, but when taken as a whole it tends to show that they did have such an interest.

From what we have already said it can be seen that the pleadings and proof were sufficient to uphold the agreement made between the parties.

Judgment affirmed.